UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BRIAN WILLIAMS,

                          Plaintiff,

v.

                         Case # 17-CV-6205-FPG

                         DECISION AND ORDER

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.

## INTRODUCTION

Brian Williams brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security that denied his applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 12, 13. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

## BACKGROUND

On September 11, 2013, Williams protectively applied for DIB and SSI with the Social Security Administration ("the SSA"). Tr.[1] 247-57. He alleged disability since January 31, 2013 due to scoliosis and lead poisoning. Tr. 294. On August 13, 2015, Williams and a vocational

---

[1] References to "Tr." are to the administrative record in this matter.

expert ("VE") appeared and testified at a hearing before Administrative Law Judge Brian Kane ("the ALJ"). Tr. 27-54. On September 14, 2015, the ALJ issued a decision finding that Williams was not disabled within the meaning of the Act. Tr. 13-21. On February 28, 2017, the Appeals Council denied Williams's request for review. Tr. 1-5. Thereafter, Williams commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful

work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ's decision analyzed Williams's claim for benefits under the process described above. At step one, the ALJ found that Williams had not engaged in substantial gainful activity since the alleged onset date. Tr. 15. At step two, the ALJ found that Williams has a learning disability and scoliosis, which constitute severe impairments. *Id.* At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 16-17.

Next, the ALJ determined that Williams retains the RFC to perform light work[2] that is simple and unskilled. Tr. 17-19. At step four, the ALJ indicated that Williams has no past relevant work. Tr. 19. At step five, the ALJ relied on the VE's testimony and found that Williams can adjust to other work that exists in significant numbers in the national economy given his RFC, age, education, and work experience. Tr. 20-21. Specifically, the VE testified that Williams could work as a cleaner/housekeeper and marker. Tr. 20. Accordingly, the ALJ concluded that Williams was not "disabled" under the Act. Tr. 21.

### II. Analysis

Williams argues that remand is required because the ALJ improperly evaluated his mental impairment under Listing 12.05C at step three of the disability analysis. ECF No. 12-1 at 10-13. The Court agrees.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

### A. Step Three Standard

At step three of the disability analysis, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a Listings impairment. 20 C.F.R. §§ 404.1520(d); 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's RFC and proceeds to the next steps of the analysis. 20 C.F.R. §§ 404.1520(e)-(f); 416.920(e)-(f).

To match an impairment in the Listings, the claimant's impairment "must meet all of the specified medical criteria" of a Listing. *Barber v. Comm'r of Soc. Sec.*, 6:15-CV-0338 (GTS/WBC), 2016 WL 4411337, at *3 (N.D.N.Y. July 22, 2016) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* An impairment may also be "medically equivalent" to a listed impairment if it is "at least equal in severity and duration to the criteria of any listed impairment." *Id.* (citation omitted).

An ALJ must explain why a claimant failed to meet or equal the Listings "[w]here the claimant's symptoms as described by the medical evidence appear to match those described in the Listings." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 273 (N.D.N.Y. 2009) (citation omitted). Importantly, it is the ALJ's responsibility—and not the job of the Commissioner's attorney—to "build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review." *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 142 (N.D.N.Y. 2012). The Court "cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." *Id.* "Nevertheless, an ALJ's unexplained conclusion at step three of the analysis may

be upheld where other portions of the decision and other clearly credible evidence demonstrate that the conclusion is supported by substantial evidence." *Yeomas v. Colvin*, No. 13-CV-6276P, 2015 WL 1021796, at *17 (W.D.N.Y. Mar. 10, 2015) (citation, quotation marks, and alterations omitted); *see also Berry v. Schweiker*, 675 F.2d 464, 468-69 (2d Cir. 1982) (affirming step three decision even though ALJ did not set forth a specific rationale "since portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence").

### B.     Listing 12.05C

Listing 12.05 relates to intellectual disability. *See* 20 C.F.R. Part 404, Subpart P, App'x 1 at § 12.05 (effective Aug. 12, 2015 to May 23, 2016).[3] "Intellectual disability" is defined as "significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." *Id.*; *see also* Tr. 16. If the claimant's impairment satisfies this diagnostic description and one of four sets of criteria—specified in paragraphs A through D—the ALJ will find that his impairment meets the Listing. *Id.*

Here, Williams's sole argument is that the ALJ erred when he evaluated the "paragraph C" criteria, which requires the claimant to have "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.*

---

[3] The ALJ rendered his decision on September 14, 2015, and therefore this is the relevant version of Listing 12.05 for evaluating the severity of Williams's mental impairment. On September 26, 2016, the SSA finalized new regulations revising this portion of its Listings, which became effective on January 17, 2017. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138 (Sept. 26, 2016). The regulations provide the following instruction regarding retroactive application: "We expect that Federal courts review our final decisions using the rules that were in effect at the time we issued the decisions." *Id.* at 66138 n.1; *see also*, *e.g.*, *Gushen v. Comm'r of Soc. Sec.*, No. 16-cv-10003, 2017 WL 1807605, at *2 n.2 (E.D. Mich. Feb. 23, 2017).

C.     **Application**

The ALJ concluded that Williams did not meet Listing 12.05C because he "does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Tr. 16. Specifically, the ALJ noted that "[t]here is no IQ test on file indicating scores at these levels." *Id.* The ALJ offered no further explanation as to why Williams did not meet Listing 12.05C.

Williams argues that this finding is incorrect because the record contains a full-scale IQ score of 69 from an IQ test that was performed in 2004. ECF No. 12-1 at 10-13 (citing Tr. 328). The Commissioner argues that the ALJ did not err because this IQ score is not valid under the SSA's Program Operations Manual System ("POMS") since Williams was only 13-years-old when the score was obtained. Specifically, the Commissioner cites portions of the POMS that indicate that IQ scores "generally" tend to stabilize by age 16 and that the ALJ "may" use a "general guideline" that an IQ score of 40 or above obtained between ages 7 and 16 is current for two years. *See* POMS DI 28010.150(A)(1), 24515.055(D).[4] The ALJ, however, did not cite this reason for finding that Williams did not meet Listing 12.05C, and the Commissioner may not substitute her own rationale when the ALJ failed to provide one. *See Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("A reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action.") (quotation marks and citation omitted).

Because it appears that Williams may meet Listing 12.05C based on his full scale IQ score of 69, the ALJ was obligated to explain why he concluded otherwise. *See Rockwood*, 614 F. Supp.

---

[4] The Court notes that although the POMS "is the authorized means for issuing official SSA policy and operating instructions regarding the agency's interpretation of regulations," it "has no legal, binding effect." *Ellis v. Apfel*, 147 F.3d 139, 142 n.3 (2d Cir. 1998) (citing POMS § 2002.001 and *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981)); *see also Frerks v. Shalala*, 848 F. Supp. 340, 350 (E.D.N.Y. 1994) (noting that the POMS "is entitled to persuasive authority" but "is not published in the Federal Register, and does not have the force of law").

2d at 273. The ALJ's decision lacks "an accurate and logical bridge from the evidence to [his] conclusion" and therefore the Court cannot conduct a meaningful review. *Hamedallah*, 876 F. Supp. 2d at 142. Moreover, the remainder of the ALJ's decision does not permit the Court to "glean the rationale" behind his conclusion. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) ("When . . . the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."). There is no indication that the ALJ was aware of this IQ score or, if he was, why he decided to reject that score.

Accordingly, for all the reasons stated, remand is required. On remand, the Court directs the ALJ to specifically evaluate Williams's learning disability under Listing 12.05C. If the ALJ finds that Williams's impairment does not meet that Listing, he must provide clear reasons why.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 12) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 13) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: April 6, 2018
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court